624 S.E.2d 586

**DUNBAR FRATERNAL ORDER OF POLICE, LODGE # 119 Randy L. Gillespie, Lodge President, Plaintiffs below, Appellees,**

v.

**THE CITY OF DUNBAR, Defendant Below, Appellant.**

No. 32655.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 15, 2005.

Decided Dec. 1, 2005.

Forrest H. Roles, Esq., Allison S. Williams, Esq., Dinsmore & Shohl LLP, Charleston, for Appellant.

John F. Dascoli, Esq., The Segal Law Firm, Charleston, for Appellees.

PER CURIAM:

Appellant, City of Dunbar, appeals the September 3, 2004 order of the Circuit Court of Kanawha County that granted summary judgment to Appellee Dunbar Fraternal Order of Police in its action to enforce the terms of a collective bargaining agreement entered into between the two parties. After careful consideration of the parties' arguments, we affirm, in part, reverse, in part, and remand for additional proceedings.

## I.

### FACTS

On October 16, 1995, Appellant City of Dunbar (hereafter "the City") and Appellee Dunbar Fraternal Order of Police (hereafter "FOP") entered into a collective bargaining agreement (hereafter "CBA"). At issue in this case are three provisions of the CBA. The first is the termination provision which provides that "This Agreement shall become effective October 16, 1995 and shall termi-

nate on October 16, 1998." The second is the renegotiation provision which states:

> The parties to this Agreement hereby agree, commencing at least sixty (60) days prior to the expiration of this Agreement, to bargain in good faith with regard to a successor contract. While negotiations are continuing, this Agreement shall remain in full force and effect for such an additional period of time as is necessary to negotiate a successor contract.

The third provision at issue is one regarding health insurance premiums which provides:

> The members of the Police Department covered under this agreement will pay no more premium or be provided any less benefit coverage than any other bargaining unit in the City of Dunbar.

By letter dated August 13, 1998, the City sent notice to the FOP indicating that it did not intend to renegotiate a contract with the FOP upon the termination of the CBA on October 16, 1998. On September 24, 1998, the FOP filed an action against the City alleging in Count I that the CBA contains no termination clause and that the City was required to bargain for a successor agreement. In Count II, the FOP contended that the City unilaterally altered the terms of the contract by requiring police officers to pay contributions toward their health insurance coverage. Count II further alleges that the City should be required to abide by the CBA and to continue paying health insurance coverage until the parties reach a successor agreement.

On March 11, 2000, the circuit court ordered a stay of proceedings pending the outcome of litigation involving the City and its firefighters in regard to health insurance premium contributions. Subsequently, after an August 18, 2003, hearing, the circuit court lifted the stay. On September 2, 2003, the City moved to file an amended answer to set forth a number of additional defenses. By order dated November 14, 2003, the circuit court denied the City's motion, finding that the "Plaintiff is on notice of the Defendant's position by virtue of the remainder of the Answer." Thereafter, the parties filed cross motions for summary judgment. On Sep-

tember 3, 2004, the circuit court granted the FOP's summary judgment motion.

The circuit court ruled in its order that the City is required to pay the difference between HMO and PEIA basic indemnity health premiums for FOP members. The circuit court further ordered the City to negotiate in good faith with respect to a successor agreement, ordered the parties to mediate toward an agreement, and ordered the City to pay for the mediator's fees. Finally, the circuit court ordered the City to pay for the FOP's attorney fees and costs.

## II.

### STANDARD OF REVIEW

In reviewing the circuit court's summary judgment order, we are mindful that, "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

### DISCUSSION

The City challenges the circuit court's summary judgment order on several grounds. First, the City asserts that the circuit court abused its discretion by denying the City's motion for leave to file an amended answer. Specifically, the City argues that it was not dilatory in filing its motion to amend because no discovery had occurred and summary judgment motions had not yet been briefed. We reject the City's argument. The FOP filed its complaint on September 24, 1998, and the City filed its answer on October 7, 1998. On March 11, 2000, the circuit court ordered a stay of proceedings pending the outcome of the firefighters' litigation against the City. The City filed its motion for leave to amend its answer after the stay was lifted about three and one-half years later. Significantly, the City had fifteen months to file its motion to amend between the filing of its answer and the circuit court's stay of the proceedings, but it failed to do so.

In Syllabus Point 3 of *State ex rel. Vedder v. Zakaib*, 217 W.Va. 528, 618 S.E.2d 537 (2005), this Court held:

> The liberality allowed in the amendment of pleadings pursuant to Rule 15(a) of the West Virginia Rules of Civil Procedure does not entitle a party to be dilatory in asserting claims or to neglect his or her case for a long period of time. Lack of diligence is justification for a denial of leave to amend where the delay is unreasonable, and places the burden on the moving party to demonstrate some valid reason for his or her neglect and delay.

We do not believe that the City has demonstrated a valid reason for its 15–month delay between the time it filed its answer and the stay of proceedings. Every new defense sought to be raised by the City in its proposed amended answer was or should have been known by the City when it filed its answer. Therefore, we conclude that the circuit court did not abuse its discretion in denying the City's motion for leave to file an amended complaint.

Second, the City contends that the circuit court erroneously granted the FOP's motion for summary judgment by failing to address arguments raised in the City's motion for summary judgment and its opposition to the FOP's summary judgment motion. Specifically, the City claims that the circuit court failed to address its argument that the CBA is void *ab initio* pursuant to W.Va.Code § 11–8–26 (1963),[1] which states, in pertinent part,

> Except as provided in sections fourteen-b [§ 11–8–14b], twenty-five-a [§ 11–8–25a] and twenty-six-a [§ 11–8–26a] of this article, a local fiscal body shall not expend money or incur obligations:
>
> (1) In an unauthorized manner;
>
> (2) For an unauthorized purpose;
>
> (3) In excess of the amount allocated to the fund in the levy order;
>
> (4) In excess of the funds available for current expenses.

According to the City, this code section prohibits a local fiscal body from entering into a contract the performance of which would invade revenue for a subsequent year. The City contends that because the CBA at issue bound the City in 1995 to pay wages and benefits to police officers for 1996, 1997, and 1998, the CBA is void.

Cases cited by the City in support of its position include *State ex rel. Mick v. County Court of Lewis County*, 110 W.Va. 533, 158 S.E. 790 (1931), *Ireland v. BOE of Kanawha Co.*, 115 W.Va. 614, 177 S.E. 452 (1934), and *Meador v. County Court of McDowell Co.*, 141 W.Va. 96, 87 S.E.2d 725 (1955), in which this Court refused to enforce multi-year employment contracts entered into by cities or counties based on W.Va.Code § 11–8–26. The FOP responds by citing *Huntington Water Corp. v. City of Huntington*, 115 W.Va. 531, 177 S.E. 290 (1934), in which this Court recognized the validity of a multi-year contract entered into by the Huntington Water Corporation and the City of Huntington for water service.

We do not find it necessary to choose between the two lines of cases cited by the parties or to revisit those cases in deciding the issue before us. Rather, we deem it appropriate to decide the instant case on the unique facts before us. First, it is significant to this Court that, unlike in the cases cited to us by the City, the City did not challenge the CBA on the basis of W.Va.Code § 11–8–26 during the CBA's original term. Further, the City failed to cite W.Va.Code § 11–8–26 in its answer to the FOP's complaint. In fact, the City did not raise W.Va.Code § 11–8–26 as a defense until it filed its motion for leave to amend its answer. We believe that the proper time for the City to challenge the CBA's legality on the basis of W.Va.Code § 11–8–26 was during the CBA's initial term from October 16, 1995, to October 16, 1998. Because the City failed to do so, we will not

1. This Court has explained that "[t]hroughout its history the basic history of the statute has been that a local fiscal body shall make no contract and incur no obligation which would involve the expenditure of future levies." *Edwards v. Hylbert*, 146 W.Va. 1, 18, 118 S.E.2d 347, 356 (1960) (internal quotation marks and citations omitted). The Court has further noted that "[n]ecessity and inconvenience will not justify the bending or breaking of this law." *Shonk Land Co. v. Joachim*, 96 W.Va. 708, 721, 123 S.E. 444, 449 (1924).

at this stage in the proceedings consider the CBA to be invalid from its inception.

■ Next, the City claims that the circuit court erred in ruling that it had an obligation to bargain with the FOP to reach a successor agreement despite the termination clause in the CBA. We disagree. While it is true that the CBA, by its terms, provided that it was to terminate on October 16, 1998, it also contains a provision indicating that the parties are to bargain in good faith and that the terms of the CBA are to continue during that bargaining period. The City would have us enforce the termination clause and disregard the renegotiation provision. This we decline to do. This Court has held that "specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." Syllabus Point 3, in part, *Moore v. Johnson Service Co.*, 158 W.Va. 808, 219 S.E.2d 315 (1975). We believe that both the termination clause and the renegotiation clause should be given meaning, and that the City has a duty under the CBA to bargain in good faith.

■ The City, however, complains that the FOP's interpretation of the renegotiation clause results in the perpetual enforcement of the CBA. We are sympathetic to the City's concern. Again, the renegotiation provision indicates that "[w]hile negotiations are continuing, this Agreement shall remain in full force and effect for such an additional period of time as is necessary to negotiate a successor contract." The language of this provision appears to indicate that the CBA is to continue until a successor agreement is reached regardless of when or *whether* a successor agreement is reached. We reject such a construction. Generally, this Court will not interpret a contract in a manner that creates an absurd result. *See* Syllabus Point 2, *Ashland Oil, Inc. v. Donahue*, 159 W.Va. 463, 223 S.E.2d 433 (1976) (holding that "Termination provisions of an agreement involving the sale of goods which, if applied strictly, are so one-sided as to lead to absurd results, will be declared unconscionable"); *Glen Falls Ins. Co. v. Smith*, 217 W.Va. 213, 221, 617 S.E.2d 760, 768 (2005) (stating that "A con-

tract of insurance should never be interpreted to create an absurd result, but should instead receive a reasonable interpretation" citing *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 432, 345 S.E.2d 33, 35 (1986), *overruled, in part, National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987)). Because to read the CBA to create a perpetual contract from which the City can never extricate itself is absurd, we interpret the CBA to terminate after a reasonable period of time regardless of whether a successor agreement is reached.

The City urges that the CBA should have terminated on October 16, 1998, according to its termination provision, if no successor agreement was reached. We disagree. The provision at issue indicates that the CBA is to remain in full force and effect while negotiations continue. If we were to accept the City's reasoning, that it was bound to bargain only until the CBA's termination date, the "full force and effect" language would be unnecessary since the CBA would by its own terms remain in effect while the parties bargained. Therefore, we believe that the language at issue should be read so as to give the parties a reasonable period of time after the termination date of the CBA to reach a successor agreement, during which time the CBA will remain in effect. Under the facts of this case, and at this point in this litigation, we believe that the terms of the CBA should remain in effect until June 30, 2006. This date gives the parties more than six months to bargain in good faith after receiving this Court's decision on this issue, which we deem to be a reasonable period of time. If the parties are unable to reach a successor agreement, the CBA will terminate on June 30, 2006.

Further, the City assigns as error the circuit court's ruling that police officers cannot be required to pay the difference in premiums between the PEIA basic indemnity health plan and the HMO plan. According to the parties, the City provides its employees with health insurance through the Public Employees Insurance Agency (hereafter "PEIA"). City employees are permitted to select the type of coverage they desire from among PEIA's basic health insurance indemnity plan and an HMO plan. In 1997, the City notified its employees, including po-

lice officers, that all insurance rates would substantially increase, particularly rates for the HMO plan which would carry a much higher rate than the PEIA basic plan. As a result, those employees who selected the more expensive HMO coverage were required to pay the difference in premiums between the PEIA indemnity plan and the HMO plan. It is the position of the FOP that those officers who selected HMO coverage are entitled to reimbursement for the difference in the premiums.

The circuit court found on this issue as follows:

> The applicable contractual language is found in Article XVI of the Fraternal Order of Police (FOP) contract. It states that,

> > "The members of the Police Department covered under this agreement will pay no more premium or be provided any less benefit coverage than any other bargaining unit in the City of Dunbar."

> Since the FOP coverage necessarily depends on the coverage of other "bargaining units," it is necessary to look at those contracts to determine the entitlements of the FOP. Therefore, the Court has reviewed the contract between the Dunbar Professional Firefighters (Firefighters) and the City of Dunbar (City). Article Seven, Section 2 of this contract states, in part, that,

> > "the City shall pay the full amount of the premium attributable to coverage of regular, full-time employees (and his or her dependents) for participation in the City's Insurance Benefits Plan concerning life and health insurance. The plan shall contain hospitalization, major medical coverage, short term disability and life insurance. . . ."

> The FOP contract at issue here was in effect between October 16, 1995 and October 16, 1998. The Firefighters' contract was in effect between February 26, 1995 and February 25, 1998. After careful consideration of the arguments presented, the Court finds that the City violated Article XIV of the FOP contract in requiring those officers who had HMO coverage to pay the difference in cost of the HMO premium and the non-HMO premium during the contract peri-

od. The Court finds that although the City was under no obligation to offer the additional HMO coverage, once it did so, it was bound by the language of Article Seven, Section 2 of the Firefighter contract which obligated the City to pay the full amount of the premium.

According to the City, the circuit court erred in its interpretation of the FOP and firefighters' contracts. The City contends that the FOP contract requires only that the FOP pay no more of a premium than any other bargaining unit. At all times pertinent to this litigation, says the City, both the firefighters and the FOP members who selected the HMO plan have been responsible for the difference between the more expensive HMO premium and the less expensive PEIA premium. Thus, concludes the City, the FOP members have not paid more than the firefighters for health insurance.

 We find that the circuit court erred in granting summary judgment on this issue. The Health Insurance provision of the CBA provides that "[t]he members of the Police Department covered under this agreement will pay no more premium or be provided any less benefit coverage than any other bargaining unit in the City of Dunbar." As correctly noted by the circuit court, if the City's firefighters do not pay the difference between the PEIA basic plan and the HMO plan, the CBA mandates that the FOP members also cannot be compelled to pay the difference. The circuit court interpreted the firefighters' agreement with the City to provide that the City would pay all of the firefighters' premium under the more expensive HMO plan. However, the City had disputed this very interpretation and, as a result, the firefighters and the City were in litigation over this issue in a separate proceeding at the time the circuit court granted summary judgment in the instant case. This Court has held that "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Cas. & Surety Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Again, at the time the circuit court interpreted the Dunbar firefighters' CBA, its interpretation remained a

question of fact to be decided in another proceeding. Therefore, we believe the circuit court erred by prematurely deciding this issue before it was fully litigated. Accordingly, we reverse the circuit court and remand for further consideration of this issue.[2]

Finally, the City asserts that the circuit court erroneously awarded attorney fees and costs to the FOP. In response, the FOP cites two bases for the fees and costs—the Wage Payment and Collection Act which provides that employees can receive reasonable attorney fees and costs for having to pursue litigation to force employers to pay wages and benefits owed to them; and the fact that the failure of public officials to discharge their clear duties can be the basis for an award of attorney fees and costs in mandamus actions.

 We reject the City's argument on this issue. "As a general rule, each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syllabus Point 2, *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). Also, "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees and 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 3, *Sally–Mike, supra.*[3] We believe

2. In its brief to this Court, the FOP says that an April 5, 2005 order entered by the judge in the separate firefighters' proceeding specifically ordered the City "to pay the premiums for both HMO and non-HMO participants." The FOP attached a copy of this order to its brief. This Court will not consider this order because it was not part of the record below when the circuit court in this case granted the FOP's motion for summary judgment. Also, the City raises challenges to the propriety of the April 5, 2005 order. Therefore, we believe that the best course is to remand this issue to the circuit court to take additional evidence and hear the arguments of the parties.

3. The City also asserts that the circuit court erred in ordering the parties to mediate without giving them an opportunity to negotiate on their own, and in ordering the City to pay the mediator's fees. According to the City, the circuit court has left it in a "perplexing" situation. So long as the FOP does not agree to a new contract, the City must pay the costs of the terms of employment in the CBA and must pay the mediation costs while

that the City acted in bad faith by refusing to bargain with the FOP to reach a successor agreement. Even if this Court accepts that the City had a good faith belief that the CBA was to terminate on October 16, 1998, regardless of whether a successor agreement was reached, the fact remains that the City, 60 days prior to that termination date, flatly refused to attempt to negotiate a new CBA. Instead, the City simply stated that it did not intend to renegotiate a contract with the FOP upon the CBA's termination. Such action was in gross violation of the clear agreement entered into by the parties "to bargain in good faith with regard to a successor agreement." Therefore, we do not believe that the circuit court erred in awarding attorney fees and costs to the FOP.

## IV.

## CONCLUSION

In conclusion, for the reasons stated above, this Court concludes first that the circuit court did not err in failing to grant the City's motion for leave to file an amended answer. Second, we find that the parties herein had a duty under the CBA to bargain in good faith to reach a successor agreement, and we affirm the circuit court on this issue. We further find that this duty to bargain extends for a reasonable period of time which this Court believes should expire on June 30, 2006. Third, we conclude that there are

continuing to bargain to reach a successor agreement. The City believes that such a situation does not leave the FOP with much of an incentive to reach an agreement.

According to Rule 25.03 of the West Virginia Trial Court Rules, "a court may, on its own motion ... refer a case to mediation. Upon entry of an order referring a case to mediation, the parties shall have fifteen (15) days within which to file a written objection, specifying the grounds." This Court does not find in the record where the City filed such an objection to the circuit court's mediation ruling. Generally, "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958). Because the City did not file an objection to the court-ordered mediation, the circuit court was not given the opportunity to reconsider its ruling. Accordingly, we decline to address this assignment of error.

disputed issues of genuine fact concerning the City's obligation to pay the entire health care premium of those FOP members who are under the HMO health care plan. Therefore, we reverse and remand for further proceedings on this matter. Finally, we affirm the circuit court's grant of attorney fees and costs to the FOP. Accordingly, the September 3, 2004, order of the Circuit Court of Kanawha County that granted summary judgment to the FOP is affirmed, in part, reversed, in part, and remanded.

Affirmed, in part, reversed, in part, and remanded.

Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge KIRKPATRICK, sitting by special assignment.