STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**Keyser House Bonds, LLC,**
**Plaintiff Below, Petitioner**

**FILED**
**February 14, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-1505** (Mineral County 12-C-62)

**Keyserhouse Associates, LTD Partnership, and**
**the City of Keyser,**
**Defendants Below, Respondents**


**MEMORANDUM DECISION**

Petitioner herein and plaintiff below, Keyser House Bonds, LLC, ("Plaintiff Bondholder"), appeals an order entered by the Circuit Court of Mineral County on November 13, 2012. All parties to this appeal agree that Plaintiff Bondholder is owed approximately $650,000.00 for municipal bonds it holds that matured on April 24, 2012. The parties set forth the terms of the agreement governing the municipal bonds in an Indenture of Trust. Respondents, Keyserhouse Associates, LTD Partnership ("Respondent Partnership") and the City of Keyser ("Respondent City"), argue that Plaintiff Bondholder did not follow the proper procedure contained in the Indenture of Trust to collect payment once the bonds reached maturity. Respondents concede, however, that Plaintiff Bondholder is entitled to full payment on the municipal bonds. The circuit court's order enjoined Plaintiff Bondholder from taking any action to collect its debt on the bonds, including foreclosing on the encumbered property, because of its finding that "Plaintiff has failed to offer any evidence or proof that it complied with the pre-foreclosure notice and right to cure procedures contained in the Indenture." By counsel, Kenneth E. Webb, Jr., and Patrick C. Timony, Plaintiff Bondholder appeals the circuit court's order. Respondent Partnership, by counsel Nelson M. Michael and David Collins, and Respondent City, by counsel Lee Murray Hall and Arnold J. Janicker, assert that the circuit court's order should be affirmed.

Upon consideration of the standard of review, the parties' briefs, the record presented, and the oral arguments, this Court finds that the circuit court committed reversible error. We hereby reverse the November 13, 2012, order of the circuit court enjoining Plaintiff Bondholder from foreclosing on the Keyserhouse. This case presents no new or significant questions of law. Furthermore, for the reasons set forth herein, this case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of

1

Appellate Procedure and is appropriate for the Court to issue a memorandum decision rather than an opinion.

On June 1, 1981, Respondent City and Respondent Partnership entered into two separate agreements related to the building of a low-income housing project, the Keyserhouse. The first agreement consisted of Respondent Partnership conveying two parcels of real property to Respondent City upon which the Keyserhouse was to be built. The second agreement, an Indenture of Trust, secured the revenue bonds Respondent City issued to finance the construction of the Keyserhouse. The Indenture of Trust required Respondent Partnership to make monthly payments to the bondholder in an amount sufficient to pay the bonds in full by July 10, 2011.[1] Plaintiff Bondholder holds a one hundred percent interest in these bonds.

Respondent Partnership began experiencing financial difficulties in 2000 and was unable to make the monthly payments to the bondholders. Respondent Partnership subsequently filed for bankruptcy and the bankruptcy court entered a reorganization plan on January 23, 2002, requiring Respondent Partnership to make

---

[1]Respondent City issued two thirty-year bonds to finance the construction of the Keyserhouse. These two bonds were issued in the aggregate amount of $1,505,000.00. In its brief to this Court, Respondent City described the bond agreement between the parties as follows:

> The Bonds are secured by an Indenture of Trust, which encumbers the Keyserhouse, and an assignment of rents in favor of a Trustee created by Indenture. The Bonds are a special obligation of the City of Keyser and payable only from revenues and receipts derived from the leasing or sale of the Keyserhouse. The Bonds are not a debt of the City of Keyser, and are not payable from, or are a charge against the general revenue of the City of Keyser. The Bonds provide that holders or their assigns are scheduled to receive monthly payments of principal and interest on the Bonds from the revenue generated by the Keyserhouse in an amount sufficient to pay the Principal and Interest in full on July 10, 2011.
>
> The City, in turn, leased back to KAP (Partnership) the real property that KAP (Partnership) had conveyed to it. KAP (Partnership) built the Keyserhouse upon the real property. The Lease between the City and KAP (Partnership) was for an original term of thirty years, the end of which coincided with the date final payment was scheduled to be made on the Bonds.

2

monthly payments[2] to the municipal bondholder over the course of ten years. The reorganization plan called for the bondholder to be paid in full on or before April 24, 2012.

The bonds reached maturity on April 24, 2012, at which time Respondent Partnership failed to pay Plaintiff Bondholder the remaining debt owed on the bonds, approximately $650,000.00. After failing to receive payment, Plaintiff Bondholder sought relief from the Trustee, Huntington National Bank. Plaintiff Bondholder asserts that the Trustee failed to act promptly after being notified of Respondent Partnership's failure to pay its remaining debt on the bonds.

In addition to Respondent Partnership's failure to pay its outstanding debt, Plaintiff Bondholder alleges that Respondent Partnership had allowed the Keyserhouse to lapse into a state of dilapidation. The United States Department of Housing and Urban Development (HUD) issued numerous citations to Respondent Partnership between 2007 and 2012 for failing to provide its tenants with affordable, safe and sanitary housing. Plaintiff Bondholder asserts that HUD twice threatened to suspend its subsidy payments and to relocate the residents due to Respondent Partnership's failure to maintain the Keyserhouse.

On May 30, 2012, Plaintiff Bondholder filed an action in the circuit court requesting a declaratory judgment and a preliminary injunction based on Respondent Partnership's failure to pay its outstanding debt on the bonds and its alleged failure to maintain the Keyserhouse in a habitable condition. Plaintiff Bondholder states that it filed the action in circuit court because (1) a month had passed since the bonds matured and it had not received payment; (2) the Trustee failed to take prompt action to resolve the issue as it should have under the terms of the Indenture of Trust; and (3) their security interest in the Keyserhouse was diminishing as a result of Respondent Partnership's failure to maintain the Keyserhouse in a habitable condition. In its complaint, Plaintiff Bondholder requested that the circuit court determine the duties, rights and obligations of the parties under the Indenture of Trust.

In response to Plaintiff Bondholder's lawsuit, Respondents acknowledged that the bonds required full payment upon maturity and that the bonds were past due. However, Respondents argued that Plaintiff Bondholder failed to provide sufficient

---

[2]The reorganization plan described the amount of the monthly payments as follows:

> Class 2 claim, in the amount of $1,060,000.00 will be paid out over 10 years in monthly payments, at an interest rate of 5% per annum, with the debt balance due at the expiration of ten years.

3

notice of the default and did not provide Respondent Partnership with an opportunity to cure. Respondents argued that the right to cure provision in the Indenture of Trust provided Respondent Partnership with ninety days to cure the default.

The circuit court held a hearing on September 19, 2012. The parties discussed the physical condition of the Keyserhouse and informed the circuit court that HUD funding could be jeopardized if the Keyserhouse remained in a state of dilapidation. Both Plaintiff Bondholder and Respondent Partnership informed the court that they had management companies in place to take over the day-to-day operation of the Keyserhouse in an effort to remedy the HUD related problems.

Additionally, Plaintiff Bondholder argued during this hearing that the bonds matured on April 24, 2012, and that Respondent Partnership had failed to pay the remaining $650,000.00 owed on the bonds. Further, Plaintiff Bondholder asserted that the Indenture of Trust gave it an unconditional right to enforce payment once the bonds reached maturity, including the right to foreclose on the property if payment was not received.[3]

Respondents did not dispute (1) that the bonds had matured, (2) that Respondent Partnership failed to pay, or that (3) the Indenture of Trust allowed Plaintiff Bondholder to foreclose on the property. Rather, Respondents argued that Plaintiff Bondholder could not foreclose until it provided Respondents with notice of the default and ninety days to cure.[4] In addition to the procedural arguments Respondents raised,

---

[3]An issue that arose at the September hearing was whether Plaintiff Bondholder's proposed foreclosure would result in the residents of the Keyserhouse having to relocate. Counsel for Plaintiff Bondholder told the circuit court that "the bondholders are doing everything they can to insure that the citizens do not have to move from their homes. They've been in contact with HUD . . . HUD's approved TM Associates (Plaintiff Bondholder's proposed management company) to manage the property immediately and that will stop the abatement process."

Counsel for Plaintiff Bondholder repeated this statement at the October 22, 2012, status conference: "Since I've been asking for an injunction some five, six months ago, we've had an approved management company in place. We've had an agreement with HUD. It would take place immediately and **the tenants will not be moved**." (Emphasis added.)

[4]In support of this argument, Respondents cited Article VI, section 4 of the Indenture of Trust, which states:
> Whenever an event of default shall occur, the Lessee shall have the right to remedy such default within ninety days after notification of the occurrence thereof, provided that the Lessee shall pay all expenses incurred in the exercise of right

they informed the circuit court that they were attempting to sell the Keyserhouse and had a potential buyer in place. Respondents stated that a sale of the Keyserhouse would result in sufficient monies to satisfy the outstanding debt owed to Plaintiff Bondholder.

Following this hearing, the circuit court ruled that (1) Respondent Partnership could enter into an agreement with their proposed management company, RLJ Management Company, to take over the day-to-day operation of the Keyserhouse; (2) Respondent Partnership and Respondent City could immediately enter into negotiations to sell the Keyserhouse to the interested buyer (Buckeye Community Hope Foundation); (3) it would not consider Plaintiff Bondholder's motion for an injunction to take over control and management of the Keyserhouse; and (4) RLJ Management Company or Respondent Partnership were to pay Plaintiff Bondholder $5,000.00 per month to be applied to the $650,000.00 outstanding debt owed to Plaintiff Bondholder.

In making this ruling, the circuit court did not take evidence or hear testimony from either Respondent Partnership's proposed management company (RLJ Management Company) or from Plaintiff Bondholder's proposed management company (TM Associates). It is unclear, based on the record before us, why the circuit court ordered Respondent Partnership's management company to take over control of the Keyserhouse without allowing both sides to present evidence and testimony on this issue. Further, in arriving at the $5,000.00 per month amount payable to Plaintiff Bondholder, the circuit court did not provide the parties with an opportunity to brief this issue or present evidence to the circuit court. Instead, the circuit court stated that "I'm just going to pull a number out of the air that seems reasonable."[5]

Following this ruling, the Trustee[6] reviewed the Indenture of Trust and determined that it permitted Plaintiff Bondholder to initiate foreclosure proceedings on the Keyserhouse. On October 22, 2012, Plaintiff Bondholder and the Trustee notified Respondents of their intention to declare the bonds mature and unpaid, declare the outstanding debt immediately due and, if not paid, invoke the power under the Indenture of Trust to foreclose on the Keyserhouse. Plaintiff Bondholder, in conjunction with the

---

or remedies hereunder and all expenses of remedying such default. The Trustee covenants and agrees promptly to notify in writing the Issuer and the Lessee of any other default in the Indenture brought to its attention.

[5]Plaintiff Bondholder states that $5,000.00 per month is insufficient to pay the interest on the outstanding bonds.

[6]Huntington National Bank resigned its role as Trustee in August 2012. However, Huntington National Bank withdrew its resignation on October 23, 2012, and attempted to resume its role as Trustee.

Trustee, subsequently published a notice of a foreclosure sale. After this notice was published, Respondents removed the Trustee and noticed a status conference in the circuit court for October 29, 2012.

At the October status conference, Respondents argued that Plaintiff Bondholder and the Trustee violated the court's September order by initiating foreclosure proceedings. Further, Respondents informed the court that a contract to sell the Keyserhouse had been agreed to with Buckeye Community Hope Foundation. By contrast, Plaintiff Bondholder argued that it initiated foreclosure proceedings with the Trustee pursuant to the terms of the Indenture of Trust and that the court's September order did not preclude this action. After this hearing, the circuit court entered an order on November 13, 2012, ruling that (1) Plaintiff Bondholder is enjoined from foreclosing on the Keyserhouse and may not proceed with a foreclosure sale "without further order of this Court"; (2) Plaintiff Bondholder may not interfere with a purchase agreement between Respondents and a potential purchaser; and (3) "Huntington bank is removed as trustee herein[.]"

The circuit court's ruling was based, in large part, on Respondent Partnership's statement at the October hearing that "we have a purchase agreement between Keyserhouse Associates (Respondent Partnership) and the city (Respondent City) with Buckeye (Community Hope Foundation) for the sale of the property." The circuit court's order states:

> The public interest, as well as the interest of the citizens of Keyser living in the Keyserhouse, will be promoted by proceeding by [sic] the sale of the Keyserhouse to Buckeye as anticipated. . . . The Court also notes that the interests of the parties and interest of justice will be served by said sale and payment of the bonds with sale proceeds.

Similarly, at the September hearing, the circuit court told counsel for Plaintiff Bondholder, "I mean, if this sale goes through, you're going to get everything that's owed to you[.]" In an update provided to this Court, Respondent City reports that the sale to Buckeye Community Hope Foundation did not take place. The Keyserhouse remains unsold and the $650,000.00 bond payment that was due to Plaintiff Bondholder on April 24, 2012, remains unpaid.

After entry of the circuit court's November 13, 2012, order, Plaintiff Bondholder filed the present appeal.

Our standard of review is set forth in Syllabus Point 1 of *McCormick v. Allstate Ins. Co.,* 197 W.Va. 415, 475 S.E.2d 507 (1996):

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

We begin our analysis by noting three undisputed facts: (1) the bonds reached maturity on April 24, 2012; (2) the bonds were not paid in full on April 24, 2012, and (3) all parties to this appeal agree that Plaintiff Bondholder is owed approximately $650,000.00.

Plaintiff Bondholder contends that the circuit court erred by enjoining it from foreclosing on the Keyserhouse. Plaintiff Bondholder states that the Indenture of Trust gives it an unconditional right to enforce the agreement once the bonds have matured and full payment has not been made. The circuit court enjoined Plaintiff Bondholder from foreclosing based on its determination that Plaintiff Bondholder "failed to offer any evidence or proof that it complied with the pre-foreclosure notice and right to cure procedures contained in the Indenture." The issue before us is whether Plaintiff Bondholder was required to provide notice and a right to cure to Respondents after the bonds reached maturity and were not paid.

Plaintiff Bondholder argues that under the plain language of the Indenture of Trust, it was not required to provide notice and a right to cure prior to initiating foreclosure proceedings *after* the bonds had reached maturity and full payment was not made. We agree. Article VI, section thirteen of the Indenture of Trust gives Plaintiff Bondholder a clear, unequivocal right to enforce the payment of the bonds once they have reached maturity:

> It is expressly covenanted and agreed, and the Bonds issued hereunder are subject to the condition that the holders of the Bonds shall not be entitled to institute any suit, action or proceeding at law or in equity to enforce any rights or remedies granted by this Indenture unless and until the Trustee shall have refused or, for ten days following delivery to it of a written demand therefor, signed by the holders of not less than 60% of the Bonds, shall have failed to take appropriate remedial action authorized by the Indenture upon the happening of one or more events of default specified in Section 1 of this Article. Such demand shall specify and describe the default.

7

*Nothing in the Indenture contained shall, however, affect or impair the right of the holders of the Bonds to enforce the payment of the principal of and interest on the Bonds at and after maturity thereof,* or the obligation of the Issuer to pay the principal of an interest of the Bonds to the holders thereof at the time, place, from the source and in the manner in the Bonds expressed.

(Emphasis added.)

In construing a written instrument, this Court has previously held "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syllabus Point 3, in part, *Waddy v. Riggleman*, 216 W.Va. 250, 606 S.E.2d 222 (2004). Further, "[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning." Syllabus Point 3, in part, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981). We also note that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syllabus Point 1, *Cotiga Development. Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).

The circuit court enjoined Plaintiff Bondholder from taking any action to collect its debt on the bonds because of its finding that Plaintiff bondholder failed to follow the notice and right to cure provisions contained in the Indenture of Trust. The circuit court's order failed to address the above "nothing shall affect" clause. The circuit court did not cite the specific notice and right to cure language it relied upon, nor did the circuit court set forth a finding that the above "nothing shall affect" clause was subject to any notice or right to cure language contained in the Indenture of Trust.

We find that the plain language of the Indenture of Trust gives Plaintiff Bondholder an absolute right to enforce payment of the bonds once they have matured. Allowing the notice and right to cure provisions cited by Respondents to eviscerate Plaintiff Bondholder's right to enforce payment *after* the bonds have reached maturity would be contrary to the "nothing shall affect" clause. By its clear, unambiguous terms, the "nothing shall affect" clause gives Plaintiff Bondholder an absolute right to enforce payment after the bonds have reached maturity. As this Court stated in Syllabus Point 3, in part, of *Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*, 218 W.Va. 239, 624 S.E.2d 586 (2005), "[s]pecific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." In the present case, the "nothing shall affect" clause cannot be treated as meaningless or discarded. Instead, we find that the clause

8

gives Plaintiff Bondholder an absolute right to enforce payment once the bonds have reached maturity.

Moreover, the record establishes that Respondents had actual notice that the bonds had matured and were in default. Respondents do not dispute that the present lawsuit was filed on May 30, 2012, and that they received notice of and are parties to this action. Assuming arguendo that Respondents were entitled to ninety days to cure the default after receiving notice, Respondents had the opportunity to cure after receiving notice of this lawsuit.  This lawsuit was filed over twenty months ago and Respondents have yet to cure the default.  Further, Respondent Partnership entered into a bankruptcy reorganization plan in 2002 that required it to make full payment to Plaintiff Bondholder within ten years (April 24, 2012). Since Respondent Partnership entered into this agreement setting forth a fixed date upon which the bonds were to be paid, Respondent Partnership cannot reasonably claim that it failed to make the remaining $650,000.00 payment to Plaintiff Bondholder due to lack of notice.

Based on all of the foregoing, we find that the circuit court abused its discretion by enjoining Plaintiff Bondholder from enforcing its right to full payment on the bonds once they reached maturity.  The circuit court's order was based, in significant part, on Respondents' statement at the October 2012 hearing that a sale of the Keyserhouse was eminent and that the sale would produce sufficient funds to pay the debt owed to Plaintiff Bondholder. That sale did not occur and Plaintiff Bondholder still holds bonds that matured on April 24, 2012, for which it has not been paid.  Plaintiff Bondholder is entitled to seek payment on the bonds through means, including foreclosure, set forth in the Indenture of Trust. We therefore reverse the circuit court's November 13, 2012, order enjoining Plaintiff Bondholder from foreclosing on the Keyserhouse.

Reversed.

**ISSUED: February 14, 2014**

**CONCURRED IN BY:**
Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II