**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1751**

BECKLEY ONCOLOGY ASSOCIATES, INC.,

     Plaintiff − Appellant,

  v.

RAMI ABUMASMAH, M.D.,

     Defendant – Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Irene C. Berger, District Judge.  (5:18−cv−01549)

Argued:  December 11, 2020         Decided:  April 8, 2021

Before GREGORY, Chief Judge, and KING and DIAZ, Circuit Judges.

Appeal dismissed by published opinion. Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge King joined.

**ARGUED:**  Justin M. Harrison, JACKSON KELLY, PLLC, Charleston, West Virginia, for Appellant.  Omar Dirar Ahmad, EVES LAW FIRM, PLLC, Huntington, West Virginia, for Appellee.  **ON BRIEF:**  Grace E. Hurney, JACKSON KELLY, PLLC, Charleston, West Virginia, for Appellant.

DIAZ, Circuit Judge:

Beckley Oncology Associates ("BOA") appeals from the district court's dismissal of its complaint seeking to vacate an arbitration award in favor of Dr. Rami Abumasmah, an oncologist and former BOA employee. The arbitrator awarded relief to Dr. Abumasmah in a compensation dispute following BOA's termination of his employment. The employment agreement between BOA and Abumasmah purported to waive both judicial and appellate review of the arbitrator's decision. Because the waiver of appellate review is enforceable, we dismiss BOA's appeal.

I.

A.

BOA provides cancer treatment from its office in Beckley, West Virginia. Early in 2012, BOA recruited Dr. Abumasmah to join the practice as a medical oncologist. After several months of negotiations, Abumasmah signed an employment agreement with BOA. Among other things, the agreement provided that the parties would arbitrate

> All disputes, controversies and disagreements between the Employer and Physician connected with, related to or arising out of (i) the employment relationship between the parties, including its commencement and termination and all activities throughout; (ii) the execution, delivery, interpretation or enforcement of this Employment Agreement; (iii)[ ]any other written or oral agreements between the parties, and (iv) any business or professional activities between the parties or any other rights, duties, or responsibilities between the parties arising out of their business or professional affairs[.]

J.A. 30–31. The parties further agreed that the arbitrator's decision "shall be final and conclusive and enforceable in any court of competent jurisdiction *without any right of judicial review or appeal*." J.A. 31 (emphasis added).

The two-year employment agreement (which BOA drafted) would automatically renew for successive one-year terms, unless either party gave 90-days' notice of termination, which could be without cause. Abumasmah would be eligible to join the partnership at the end of the initial two-year employment term, if the current shareholders approved.

The agreement included the following incentive bonus provision:

Employer may, in its sole and absolute discretion, declare and pay bonuses to Physician from time to time. This, notwithstanding, Employer agrees to pay Physician an incentive bonus during the initial two year term of this agreement as follows: In addition to a base salary of $275,000.00 per year, the physician shall be entitled to incentive bonus compensation based on gross collections (receipts) as follows in each year of the initial term of this agreement: . . . The incentive bonus payment shall be made to Physician following the completion of the first 12 months of this agreement, and subsequently following the completion of the second 12 months of the initial term. The specific terms of this incentive bonus are provided only for the initial term of this agreement, and are subject to renegotiation in subsequent renewals of this agreement.

J.A. 24.

Finally, the agreement provided that "[t]he invalidity or unenforceability of any provision in the Agreement shall not in any way affect the validity or enforceability of any other provision[,] and this Agreement shall be construed in all respects as if such invalid or unenforceable provision had never been in the Agreement." J.A. 31–32.

3

B.

Dr. Abumasmah began working at BOA in July of 2012. During his first six months at BOA, Abumasmah explored the possibility of joining the partnership but was uncertain whether he could afford the requisite capital contribution. In 2014, Abumasmah was invited to join the partnership, but he declined.

Early the following year, Abumasmah told BOA that he planned to leave the country for at least six months so that he could travel to Amman, Jordan to care for his mother. Abumasmah's last day at BOA was June 25, 2015. He arrived in Jordan shortly thereafter, where he has remained. Before he left, Abumasmah told BOA that he didn't expect to receive compensation during his indefinite leave and offered to resign.

BOA terminated Abumasmah's employment on his last day and sent him a separation agreement. Abumasmah disagreed with several of the agreement's terms. Relevant here is the provision stating that the incentive bonus payment of $72,994, which he received in June of 2015, was the entire bonus due for 2014–2015.

Abumasmah received annual incentive bonuses of $141,000 and $242,000 in 2012–13 and 2013–14 respectively. He didn't receive an accounting of his gross collections for 2014–15, whereas he received such reports for his first two years of employment. According to BOA, Abumasmah did not receive a report for 2014–15, because he wasn't entitled to an incentive bonus for that year.[1]

_____

[1] It's unclear then why BOA paid Abumasmah any incentive bonus for 2014–15.

Abumasmah generated more revenue during each successive year of his employment, bringing in $7.1 million in 2014–15. Based on the formula for calculating his incentive bonus in effect for the first two years of his employment, Abumasmah claimed that he should have received a $328,070.57 bonus for his 2014–15 collections.

Abumasmah sought arbitration of his claims against BOA. The arbitrator determined that Abumasmah was entitled to an incentive bonus for his third year of employment, though not on the same terms as before. Instead, the arbitrator concluded that Abumasmah's incentive bonus "shall be determined by the incentive bonus methodology utilized by [BOA] for its employee physicians." J.A. 48. If BOA had no such methodology, or if the result would be "unjust in these circumstances," then the bonus would be determined based on the methods "commonly found" for calculating incentive bonuses for physicians. *Id.* The arbitrator noted that section 16 of the employment agreement gave him "the right and duty to give appropriate equitable and legal relief." *Id.* And, said the arbitrator, the parties agreed that West Virginia law—which recognizes the concept of unjust enrichment—governed the terms of the Employment Agreement. *Id.*

After additional briefing from the parties on the method for calculating the incentive bonus, the arbitrator awarded Abumasmah $167,030,[2] 2.5% of the gross revenue he generated. The arbitrator awarded this amount "[t]o prevent the unjust enrichment of

---

[2] This amount appears to include the $72,994 incentive bonus BOA paid Dr. Abumasmah for 2015, as the arbitrator stated that Abumasmah's total compensation for 2014–15 would be "$442,030 ($275,000 in base salary plus the $167,030 incentive bonus)." J.A. 19.

[BOA] and to compensate [Dr. Abumasmah] for the extraordinary revenue which he generated during his third year of employment." J.A. 18.

BOA filed a complaint in federal district court to vacate the arbitration award. The district court granted Abumasmah's motion to dismiss the complaint and confirmed the award. *Beckley Oncology Assocs., Inc. v. Abumasmah*, No. 5:18-CV-01549, 2019 WL 2721146, at *1 (S.D. W. Va. June 28, 2019). The court held that the clause prohibiting judicial review of the arbitration award was unenforceable under the Federal Arbitration Act ("FAA") because enforcing such clauses would upset the balance between the FAA's mechanisms for enforcing arbitration awards and permitting courts to substantively review the arbitral process and associated awards. *Id.* at *4. But the court ultimately upheld the arbitrator's award because "[n]othing in the Arbitrator's rulings suggest[ed] that he refused to heed a clearly defined legal principle or deliberately disregarded the contract language." *Id.* at *5.

This appeal followed.

II.

While BOA raises several challenges to the arbitrator's award, the threshold issue is whether it validly waived "any right of . . . appeal" following the district court's confirmation of the award. J.A. 31. The validity of an appellate waiver in an arbitration agreement under the FAA is a matter of first impression in this circuit. But the Tenth Circuit has evaluated such a waiver and deemed it enforceable. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 830 (10th Cir. 2005). We agree with our sister circuit.

6

The clause at issue in *Gorelick* provided that "[j]udgment upon the award rendered by the arbitrator shall be final and nonappealable." *Id.* at 827. The agreement did not, however, purport to foreclose judicial review altogether. *Id.* at 829–30. The Tenth Circuit reasoned that a provision prohibiting appellate, but not district court, review is "a compromise whereby the litigants trade the risk of protracted appellate review for a one-shot opportunity before the district court." *Id.* at 830. Such provisions are consistent with "the fundamental policy behind the FAA . . . to reduce litigation costs by providing a more efficient forum." *Id.* at 829.

The court also noted that, outside of the arbitration context, the courts of appeals enforce agreements that waive appellate review of district court decisions. *Id.* at 830. Indeed, we routinely enforce appellate waivers in plea agreements, where the stakes, namely years of lost liberty, are far higher than the monetary award at issue here. *See, e.g.*, *United States v. Blick*, 408 F.3d 162, 168–69 (4th Cir. 2005) (enforcing waiver and explaining that "a defendant who waives his right to appeal for the purpose of obtaining concessions from the government may not ignore his part of the bargain" (cleaned up)); *United States v. Cohen*, 459 F.3d 490, 494–95 (4th Cir. 2006) (same). "If defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial, surely they are not precluded from waiving procedural rights granted by statute." *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989).

A party's right to seek appellate review of a district court's confirmation of an arbitration award is wholly a creature of statute. *See* 9 U.S.C. § 16(a)(1)(D) ("An appeal *may* be taken from . . . an order . . . confirming or denying confirmation of an award."

7

(emphasis added)).  Thus, nothing precludes a party from waiving appellate review of that decision, as BOA expressly did here.

The Ninth Circuit's decision in *In re Wal-Mart Wage & Hour Employment Practices Litigation*, 737 F.3d 1262 (9th Cir. 2013), upon which BOA relies, is not to the contrary.  There, the court held that "[p]ermitting parties to contractually eliminate *all judicial review* of arbitration awards would not only run counter to the text of the FAA, but would also frustrate Congress's attempt to ensure a *minimum level of due process* for parties to an arbitration."  *Id.* at 1268 (emphases added).  "Just as the text of the FAA compels the conclusion that the grounds for vacatur of an arbitration award may not be supplemented, it also compels the conclusion that these grounds are not waivable, or subject to elimination by contract."  *Id.* at 1267.

Assuming *arguendo* that the Ninth Circuit's holding is correct, it doesn't support invalidating the appeal waiver in this case.  BOA received a "minimum level of due process" before the district court.  Thus, even if the parties couldn't waive all judicial review of the arbitration award, they were certainly free to waive appellate review of the district court's decision confirming or vacating the award.  *See Gorelick*, 427 F.3d at 829–30.

BOA's attempt to distinguish *Gorelick* is unavailing.  BOA argues that, in contrast to the provision at issue in *Gorelick*, which waived the right to appeal the district court's judgment confirming or vacating an arbitration award, the clause here forecloses only direct appeal of the arbitrator's decision to the district court or this court on the merits.  But

8

that reading would effectively render the provision a nullity,[3] as the FAA effectively bars merits review of arbitration decisions.

It's black letter law that judicial review of an arbitration award in federal court is "substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). We have said that the scope of judicial review of an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). "[O]ur province is not to determine the merits of the dispute between the parties but rather to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 445 (4th Cir. 2020) (cleaned up). Thus, a contract provision purporting to bar a district or circuit court from reviewing an arbitrator's decision on the merits is essentially meaningless, since the FAA forecloses all but the most limited review.

---

[3] *See, e.g.*, *Equinor USA Onshore Props. Inc. v. Pine Res., LLC*, 917 F.3d 807, 813 (4th Cir. 2019) ("Reading the contract as a whole, we must be mindful that 'specific words or clauses . . . are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.'") (quoting *Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*, 624 S.E.2d 586, 591 (W. Va. 2005) (per curiam)).

BOA's last redoubt is to characterize the provision as "stale" and thus unclear. Stale or not, the provision purports to waive two things: the right to judicial review and the right to appellate review of the arbitrator's decision. It may well be that parties can't waive all judicial review of an arbitrator's decision.[4] But because the employment agreement contains a severability clause, and because unenforceable provisions in arbitration clauses are severable if they don't go to the essence of the contract, we need not invalidate the appeal waiver. *See, e.g.*, *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 292–93 (4th Cir. 2007) (collecting cases finding unenforceable provisions of arbitration agreements severable and holding that, when some provisions of an arbitration agreement are not enforceable, "then the court must determine whether the unenforceable provisions are severable." (quoting *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005)); *Barach v. Sinclair Media III, Inc.*, 392 F. Supp. 3d 645, 655 (S.D. W. Va. 2019) (relying on our holdings in *Cotton Yarn* and *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675–76 (4th Cir. 2016) to hold that an unenforceable provision in an arbitration agreement was severable, because it didn't go to the essence of the contract).

---

[4] As the district court recognized in rejecting a challenge to its own jurisdiction, "arbitration awards are not self-enforcing." *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 63 (2d Cir. 2003), *abrogated by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). In *Hoeft*, the relevant agreement provided that the arbitrator's decision "shall be binding and conclusive upon each of the parties hereto and shall not be subject to any type of review or appeal whatsoever." *Id.* The Second Circuit rejected the notion that the clause prevented the district court from discharging its duty under the FAA to confirm or vacate the award. But, without any further analysis, the Court went on to consider the merits of the appeal, and reversed the district court's decision to vacate the award. With great respect for our sister circuit, we take a different tack here and choose to hold the parties to their agreement to waive appellate review.

10

Indeed, we think enforcing the waiver in this context furthers the FAA's policy objectives.  As another panel of this court recently lamented, "[t]his genre of almost-reflexive appeal of arbitration awards seems to be an increasingly common course, leading to arbitration no longer being treated as an alternative to litigation, but as its precursor." *Tecnocap, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO/CLC, Loc. Union No. 152M*, No. 19-1263, 2021 WL 164677, at *4 (4th Cir. Jan. 19, 2021) (unpublished) (per curiam).  The reflexive appeal of an arbitration award is all the more lamentable when the parties have expressly waived that right.

Finding no cause here to reject the parties' agreement, we dismiss the appeal.


*APPEAL DISMISSED*